413 P.2d 749

**KENNECOTT COPPER CORPORATION, a New York corporation, Appellant,**

v.

**Myrtle E. McDOWELL, Appellee.**

**No. 7763.**

Supreme Court of Arizona.

In Division.

April 21, 1966.

Fennemore, Craig, Allen & McClennen, Phoenix, for appellant.

Gorey & Ely, Phoenix, for appellee.

LOCKWOOD, Justice:

Plaintiff filed suit for wrongful death of his son, Leslie McDowell. He alleged that on December 26, 1959, at approximately 1:30 A.M., Leslie McDowell drove an automobile onto the approach to a bridge known as Mineral Creek Bridge, over which passes State Highway 177 in Pinal County, Ari-

zona, and that the approach collapsed, causing the automobile to go into the creek below, and the consequential death of Leslie McDowell. Plaintiff's action was based on the theory of negligence and/or other breach of duty imposed by law on Kennecott Copper Corporation, Tanner Brothers Contracting Company, Inc., and John H. Evans & Company Contractors & Engineers, and each of them, in causing the approach to become undermined by water currents.

In substance, all the defendants denied the allegations in plaintiff's complaint. Twelve days prior to trial plaintiff and defendant Tanner stipulated to the latter's dismissal from the action without prejudice and an order of dismissal was entered as to that defendant. The case against the remaining defendants went to trial. At the conclusion of plaintiff's case a motion for directed verdict as to defendant John Evans & Company Contractors & Engineers was granted. A similar motion by the defendant Kennecott at the same time was denied. The jury returned a verdict for the plaintiff against the defendant Kennecott in the amount of $30,000.

At the end of the trial Kennecott moved for judgment in accordance with its motion for a directed verdict or in the alternative for a new trial, which the trial court denied. Kennecott appeals from the judgment of the trial court entered on the verdict of the jury for the plaintiff and from the denial of its motions by the trial court. As neither party appealed from the directed verdict in favor of John Evans Construction Company, the judgment has become final and Evans' lack of liability has become res judicata. See, Atchison, Topeka and Santa Fe Ry. Co. v. Parr, 96 Ariz. 13, 391 P.2d 575 (1964).

The facts of the case are substantially as follows: Kennecott and its predecessors in interest have, for a substantial period of time, owned and operated a copper mine at Ray, Arizona. The ore which is mined at Ray is transported by rail to Hayden, Arizona, where the ore is treated at a reduction plant. For the most part, this railroad line runs along the eastern bank of Mineral Creek, which is an intermittent stream. It heads about eight miles upstream from Ray and empties into the Gila River at Kelvin. From approximately 1922 until sometime after the accident there has been a bridge over Mineral Creek at a point approximately five and one half miles south of (downstream from) Ray.

In 1959, Kennecott proceeded to straighten out and realign the railroad and prepared the plans and specifications for this realignment. They subsequently awarded the contract to defendant John Evans & Company Contractors & Engineers, to complete the job in accordance with these plans and specifications. The job was commenced in August and completed in November of 1959

by the Evans Company under the supervision of Kennecott's chief engineer.

In order to straighten out and realign the railroad, it was necessary to excavate a portion of an adjacent butte, and deposit this excavated fill in some other location. This fill so removed was deposited in the broad channel area forming an embankment.

Plaintiff, several members of his family and several people who had lived in the Ray area for some time, testified as to their observations immediately before and after the accident and compared these observations with what they had observed in years past. They all indicated that in all the years prior to the "Evans job" they had seen water in the lowflow channel of Mineral Creek flowing along the railroad embankment, i. e., along the east side of Mineral Creek. The testimony was that the lowflow channel "hugged" the eastern bank of Mineral Creek from the area of Elder Gulch down to Mineral Creek Bridge.

Plaintiff also adduced testimony that on the evening before and the morning after the accident it appeared to witnesses that the main thrust of the water coming down Mineral Creek, instead of being directed under the Mineral Creek Bridge, as they had observed it before, was flowing directly against the approach on the Ray side of the bridge. Some of these witnesses indicated that they had never seen a high flow of water act like this before even though they had seen higher flows in the same area before.

Although the complaint was based partially on negligence the case was not presented on this basis, nor were any instructions given to the jury on negligence. It was tried on the theory that defendant's diversion of water was a breach of a duty imposed by law, which proximately caused the death of plaintiff's son.

After the appeal was taken, plaintiff (decedent's father) died and the mother of the decedent was substituted upon stipulation.

Three of appellant's assignments of error relate to one basic claim: that there is not substantial evidence to support a conclusion that there was a diversion of the natural flow of water which proximately resulted in the injury.

The plaintiff herein produced several eye witnesses who testified that the embankment caused a shift in Mineral Creek. Moreover, other witnesses testified that whereas the flow of water was directed under the bridge in 1954 (the date of a previous heavy flow), the water was directed against the side of the bridge at the time of the injury in the instant case. Thus the embankment did more than merely increase the flow of a well-defined natural watercourse. See, Southern Pac. Co. v. Proebstel, 61 Ariz. 412, 424, 150 P.2d 81, 86 (1944). Though plaintiff's witnesses were contradicted by defendant's experts, there

was substantial evidence from which a jury could find that a diversion occurred which proximately caused the resulting injury.

Defendant also argues that he was not liable for the resulting injury caused by the diversion as a "landowner is not responsible for his diversion of * * * flood waters * * *." Gillespie Land & Irrigation Co. v. Gonzalez, 93 Ariz. 152, 161, 379 P.2d 135, 142 (1963); See also, Annot. 23 A.L.R.2d .750 (1952).

■ We defined floodwaters in Southern Pac. Co. v. Proebstel, supra, as waters "which escape from a watercourse in great volume and flow over adjoining lands in no regular channel * * *." Id. at 418, 150 P.2d at 83. Thus, here, as in Schlecht v. Schiel, 76 Ariz. 214, 262 P.2d 252 (1953) there was evidence that the diverted waters were not flood waters in the legal sense as they had not broken away from the confines of the natural channel. See Milbert v. Carl Carbon, Inc., 89 Idaho 471, 406 P.2d 113 (1965); Horton v. Goodenough, 184 Cal. 451, 194 P. 34 (1920). However, even if these waters had been found to be flood waters, the result reached herein would be the same. This result follows since the privilege to embank against flood waters is qualified to the extent that an owner of land subject to overflow of flood waters who undertakes protective measures may not obstruct the flow of a natural water course. See McKell v. Spanish Fork City,

6 Utah 2d 92, 305 P.2d 1097 (1957); Town of Jefferson v. Hicks, 23 Okl. 684, 102 P. 79, 24 L.R.A., N.S., 214 (1909); Clement v. State Reclamation Board, 35 Cal.2d 628, 220 P.2d 897 (1950). As previously stated, there is substantial evidence that the embankment diverted the flow of a natural watercourse.

■ Thus the following instruction possessing a factual predicate presented no error:

"In this case the issues to be determined by you are these:

"First, Did defendant divert a natural water course?

"If your answer to that question is 'No,' you will return a verdict for the defendant. If your answer is 'Yes' you will have a second issue to determine, namely:

"Was that diversion a proximate cause of any injury to the plaintiff?

"If your answer to that question is 'No' plaintiff is not entitled to recover. If your answer to that question is 'Yes,' you must fix the amount of plaintiff's damages and return a verdict in his favor."

■ Defendant's other major assignment of error is that the directed verdict for Evans Construction at the conclusion of the plaintiff's case necessarily released Kennecott, and thus the judgment against Kennecott must be set aside. Defendant argues that a directed verdict in favor of an

agent who performs some tortious act necessarily releases the principal.

The defendant's argument has a solid predicate if the principal's liability is solely derivative. Siebrand v. Gossnell, 234 F.2d 81, 89 (9th Cir.1956); DeGraff v. Smith, 62 Ariz. 261, 157 P.2d 342 (1945); Restatement, Torts, 883(b). Freeman, Judgments § 1031 (5th ed. 1925). That is, we stated in DeGraff v. Smith, 62 Ariz. at 266, 157 P.2d at 344:

"* * * Where a master and servant are joined as parties defendant in an action for injuries inflicted by the servant, a verdict which exonerates the servant from liability for injuries caused solely by * * * the servant requires also the exoneration of the master."

■ In strict liability, as in negligence, conduct which is a proximate cause in bringing about the injury constitutes legal liability. Restatement, Torts 2d § 430(d) (e) § 431; Herzberg v. White, 49 Ariz. 313, 66 P.2d 253 (1937). Moreover, there may be more than one proximate cause of a tort. Salt River Valley Water Users' Assn. v. Cornum, 49 Ariz. 1, 63 P.2d 639 (1937). Here, Evans' act of building the embankment was not the sole proximate cause of the diversion. Evans merely followed the plans and specifications given them by their employer Kennecott. In fact in the ordinary negligence case, this fact would usually relieve the contractor of all liability, once the construction had been accepted by the employer. See Tipton v. Clower, 67 N.M. 388, 356 P.2d 46 (1960); Roman Catholic Church, Diocese of Tucson v. Keenan, 74 Ariz. 20, 243 P.2d 455 (1952). Annot. 58 A.L.R.2d 865.

■ Defendant also contends that because the doctrine of strict liability is applicable in diversion cases [Schlecht v. Schiel, 76 Ariz. 214, 262 P.2d 252 (1953)] the fact that Evans constructed the embankment excluded Kennecott's independent causation. We do not so hold. Kennecott not only supplied the plans and specifications but also actively supervised the building of the embankment, and was maintaining the embankment at the time of the heavy flow involved in this case. This is a substantial factor if not the sole proximate cause in bringing about the resulting injury.

■ Furthermore, the injury occurred, not during the period of construction, [See Barrabee v. Crescenta Mut. Water Co., 88 Cal.App.2d 192, 198 P.2d 558 (1948)] but after the embankment had been completed and accepted by the employer, Kennecott. Thus it cannot be said that the building of the embankment was the sole proximate cause of diverting the waters, but rather that the maintaining of the embankment by Kennecott during the heavy flow some two months later caused the diversion and resulting injury. As stated in Schlecht v. Schiel, supra, "The 'wilfulness' required for re-

covery here is simply that the *maintenance* of the means of diversion be wilful * *" Schlecht v. Schiel, 76 Ariz. at 218, 262 P.2d at 254 (Emphasis supplied).

We need not consider at this time whether a contractor who has been supplied plans and specifications and has completed the employment according to these plans may be considered also to have substantially or proximately caused the resulting injury.

In Atchison, Topeka and Santa Fe Ry. Co. v. Parr, 96 Ariz. 13, 391 P.2d 575 (1964) an analogous situation was presented. Therein the Santa Fe railroad contended that the failure to appeal the judgment in favor of its employee, a co-defendant, who injured plaintiff, was res judicata as to itself, as they were liable only vicariously through their employee. However, we found therein that the verdict for the employee and against the employer was not inconsistent since there was adequate evidence in the record of the employer's independent negligence. See also First Nat'l Bank of Arizona v. Otis Elevator Co. Inc., 2 Ariz. App. 80, 406 P.2d 430 (1965). Inherent in this finding of negligence is the finding of causation, which is the fundamental requisite in cases involving strict liability once harm is established.

The defendant has furthermore assigned as error the failure of the Court to grant his motion for directed verdict or motion for new trial on the ground that the evidence showed the injury may have resulted from one of several causes and that only one of the several causes can be attributed to the defendant. Therefore, defendant argues that liability cannot legally be attributed to it. For these reasons the defendant also complains of the failure of the trial court to give the following instruction:

"Where the evidence shows an injury may have resulted from one of several causes, but only one of the causes can be attributed to the defendant's diversion, if any, the plaintiff must fail." (Defendant's requested Instruction No. 6)

This assignment of error is also without merit. Though plaintiff's expert witness used the words "probable" and "possible" interchangeably, such testimony does not have to be positive in order to have some value as evidence. Apache Powder Co. v. Bond, 61 Ariz. 184, 145 P.2d 988 (1944). Thus, "if there is * * * [expert] evidence of the possibility of the existence of the causal relationship together with other evidence or circumstances indicating such relationship, the finding that the accident caused the injury will be sustained." Ideal Food Products Co. v. Rupe, 76 Ariz. 175, 178, 261 P.2d 992, 994 (1953). This expert testimony plus substantial lay testimony indicated a causal relationship which was sufficient evidence upon which

the jury could predicate its finding of liability.

Judgment affirmed.

BERNSTEIN, V. C. J., and UDALL, J., concur.