543 P.2d 428

**L. H. BELL & ASSOCIATES, INC.,**
**Appellant,**

**v.**

**William E. GRANGER and Bertha M. Granger, husband and wife, and Jay C. Robertson and Joan L. Robertson, husband and wife, Appellees.**

**No. 11998.**

Supreme Court of Arizona,
In Division.

Dec. 3, 1975.

Meyers & Curtis, by Ronald W. Meyer, Phoenix, for appellant.

Pain & Julian, by Fred J. Pain, Jr., Phoenix, for appellees.

CAMERON, Chief Justice.

This is an appeal by defendant, L. H. Bell and Associates, Inc., from a judgment entered on behalf of the plaintiffs William and Bertha Granger, husband and wife, and Jay C. and Joan L. Robertson, husband and wife, for damages sustained as a result of the flooding of property located adjacent to the New River Road and Bridge on the Old Black Canyon Highway some 40 miles north of Phoenix, Arizona.

We are asked to answer the following questions:

1. Was L. H. Bell and Associates negligent in the design of the approaches to the New River Bridge?

2. If so, did Maricopa County's acceptance of L. H. Bell's design relieve it of liability?

3. Was it error to award damages for loss of profit?

The plaintiffs Jay C. Robertson and Joan L. Robertson are owners of real property at 47801 North Black Canyon Highway, New River, Maricopa County, Arizona. The Robertson property is bordered on the west by the Old Black Canyon Highway, on the east by the New River, and on the south by the New River Road. See Exhibit A (Page 430)

442

EXHIBIT A

The New River at this point flows from the north to south and is a "braided" river meaning that in addition to the main channel of the river there are a series of side channels or "gullies" running in and out of the main channel in a meandering fashion. One of these gullies enters the Robertson property to the north about halfway between the river and the Old Black Canyon Highway and exits the property to the south. The river itself is dry much of the year and fills with water only in wet seasons or when there is runoff from rain or melting snow in the higher elevations to the north. Prior to 1970 the Robertsons constructed, on the southern part of their property and next to the New River Road, a building which housed a grocery store and a real estate office. Jay C. Robertson conducted a real estate business from there. The Grangers leased the grocery store and operated it from January 1970 until the flood of 5 September 1970. Maricopa County had, prior to 1970, constructed a dike across the land located upstream from the Robertson property. The purpose of this dike was to intercept water in the side channels of the river and divert it to the main channel of the river.

In 1969–1970, Maricopa County decided to construct a bridge over the New River at a point where the road then crossed the river. The defendants, L. H. Bell and Associates, were retained to perform preliminary engineering work and submit plans for the bridge. The designs prepared by Bell provided for the bridge as well as the approaches on each side of the bridge and dikes of rip-rap on the sides of the river. The design work was accepted by Maricopa County and construction of the bridge and approaches was completed in accordance with Bell's plans. The dike on the west side of the river and north of the bridge ran for some 250 feet. This dike prevented water from the river from entering the Robertson property at this point, but also prevented water on the Robertson property from returning to the river. The approach

to the bridge was on a gradually rising embankment from the cattle guard at the point where the New River Road met with the Old Black Canyon Highway to the level of the bridge. There were no culverts designed by Bell and none were put under the approaches so that surface or flood water would pond on the Robertson property and could not escape without going back around the dike some 250 feet to the north and upstream or flowing over the New River Road near the cattle guard. The testimony indicates that because of these obstructions the level of water on the Robertson property at the point of the building site would have to rise to a depth of over 2 feet before water would start flowing over the low end of the approach road at the cattle guard.

During the days of 5 and 6 September 1970, southeastern Utah, southwestern Colorado, and Arizona experienced unusually heavy rainfall resulting in extensive damage and the loss of some 23 lives. As a means of designating the extent of a flood, hydrologists and engineers sometimes define floods in terms of frequency in years— a 25 year flood, for example, is a flood that will mathematically occur only once in 25 years, and a 50 year flood only once in 50 years. The flow at the New River Bridge was estimated by the United States Army Corps of Engineers as 20,750 cubic feet per second and the flood was categorized as a 100 year flood. The dike to the north broke and water rushed onto the Robertson property. The embankment on which the access road to the bridge was built together with the 250 foot dike along the river acted as a dam to stop the runoff of the water. Ponding occurred and the Robertsons' building floated off its foundation and was destroyed. The span of the bridge remained above the level of the water and withstood the flood with no apparent damage.

Plaintiffs filed suit for property damages and loss of business income against Lester C. Jackson Construction Co., L. H. Bell and Associates, Inc., and Maricopa County, Ari-

zona. The complaint was amended on 24 February 1972, and Haumont Contracting, Inc., was added as a defendant.

Defendants Jackson's and Haumont's motions for summary judgment were granted prior to trial. During the trial the defendant Maricopa County settled with the plaintiffs and did not further defend. On 27 April 1973, a money judgment for damages to property and loss of business income was entered against the sole remaining defendant L. H. Bell and Associates. From this judgment defendant Bell appeals.

## WAS BELL NEGLIGENT?

The work contract or "work order project" signed by representatives of the County and Bell contained the following:

> "The Engineer shall provide professional engineering services for the design of Maricopa County Highway Project, Work Order #72–262, a Bridge on the New River Road over New River.
>
> \*  \*  \*  \*.  \*  \*
>
> "The Engineer shall make a preliminary study of the type, size, and location of the structure. This study shall include economic analysis of type of construction, waterway capacity analysis for various runoff probabilities."

And Mr. Bell testified at the trial as follows:

> "Q  Now, sir, the specific design and specifications for this bridge project are the responsibility of L. H. Bell & Associates. Is that correct?
>
> "A  Yes, sir."

And:

> "Q  Now then let me get back to my basic question. You undertook to design, did you not, sir, a bridge that was reasonably safe under ordinary foreseeable circumstances
>
> - - - -
>
> "A  Yes, sir.
>
> "Q  - - - - to humans and to property.
>
> "A  Yes, sir.

> "Q  Is that correct?
>
> "A  Yes, sir.
>
> "Q  And if the flow of water in this case be found to be by His Honor, the Judge, a reasonable foreseeable circumstance, and if it caused damage to Mr. Robertson's property, is it not fair to say that it was because of a defect in the design of the bridge and approaches?
>
> "A  If it were foreseeable."

There was testimony by Mr. Bell that he was verbally told by engineers of Maricopa County to design a bridge and its approaches to withstand a 25 year flood. There was also testimony that the building was located within the flood plain of a 50 year flood (which occurred in 1967) but not a 25 year flood. For example, Bell's expert witness testified:

> "Q  If this water is blocked, where is it going to go, say of a flood that flows with the same intensity of the 1967 flood?
>
> "A  It would pond.
>
> "Q  And is it going to create a lake on the property?
>
> "A  It would pond. Yes, sir."

Bell would have this court hold that they are liable only if the design would not protect against 25 year floods as they contend Maricopa County required and that they are not liable for damage as a result of a 100 year flood.

■ It would, of course, make the work of the trier of fact, not to mention the design engineer, easier for this court arbitrarily to select a particular year flood and say, for example, that an engineer need only plan for a 25 year flood and need not design for a 50 or a 100 year flood. We do not believe that the law of negligence allows such a mechanical solution to the question of foreseeability. Evidence that a flood is a 25 year flood or a 100 year flood is certainly admissible as to the question of foreseeability but is not conclusive.

There is a difference in the contractual liability of an engineer to design a bridge that will withstand a flood of 25 years or more and the responsibility of an engineer to design a bridge and its approaches so that in the foreseeable future flood water will not damage third parties. In the first instance had the bridge been destroyed by the flood we would have a question as to whether Bell properly designed a bridge according to his contract with Maricopa County. Under these circumstances, we would be concerned with the question of whether the bridge would withstand a 25 year flood as Bell contends his contract with Maricopa County required. Assuming this was the contract, showing that this was a 100 year flood might be a defense in any suit for breach of contract with Maricopa County. As to the question of negligence to third parties, however, the question of whether this was a 25, 50 or 100 year flood is merely one fact to be considered by the judge or jury on the question of foreseeability and negligence.

"An engineer, or any other so-called professional, does not 'warrant' his service or the tangible evidence of his skill to be 'merchantable' or 'fit for an intended use.' These are terms uniquely applicable to goods. Rather, in the preparation of design and specifications as the basis of construction, the engineer or architect 'warrants' that he will or has exercised his skill according to a certain standard of care, that he acted reasonably and without neglect. * * *" *Audlane Lumber & Builders Supply, Inc. v. D. E. Britt Associates, Inc.,* Fla.App., 168 So.2d 333, 335 (1964).

We believe that there was sufficient evidence from the testimony from which the trial court could find it was foreseeable that without culverts under the approaches to the road there was reasonable probability that plaintiffs' property would be flooded. This is a question to be determined by the trier of facts. *Corrigan v. San Marcos Hotel Co.,* 182 F.2d 719 (9th Cir. 1950); *Moore v. Maricopa County,* 11 Ariz.App. 505, 466 P.2d 56 (1970). We find no abuse of discretion in the finding by the trial court that Bell was negligent in failing to design adequate dikes and culverts for the New River Bridge and that this negligence was the proximate cause of plaintiffs' damage.

## DID MARICOPA COUNTY'S ACCEPTANCE OF L. H. BELL'S DESIGN RELIEVE IT OF LIABILITY?

L. H. Bell argues that once its plans for the design of the New River Bridge and approaches to the bridge were accepted by the county, this relieved Bell of liability for the injuries sustained by plaintiffs. Arizona follows the general rule that a contractor is not liable for injuries sustained by a third person once the work has been completed and accepted by the owner of the project. *Roman Catholic Church, Diocese of Tucson v. Keenan,* 74 Ariz. 20, 243 P.2d 455 (1952); *Kennecott Copper Corporation v. McDowell,* 100 Ariz. 276, 413 P.2d 749 (1966). However, this rule applies only when the contractor has no discretion and is merely following the plans and specifications provided by its employer.

Appellants in their brief rely heavily on this court's decision in *Kennecott,* supra. In that case, Kennecott prepared the plans and specifications for the realignment of a railroad. A contract was awarded to John Evans and Company Contractors and Engineers to complete the job in accordance with these plans. When the plaintiff, McDowell, brought suit against Kennecott Copper Corporation and John Evans and Company for wrongful death, the court entered a directed verdict for Evans Construction at the conclusion of the plaintiff's case. In *Kennecott,* supra, we stated:

"Evans merely followed the plans and specifications given them by their employer Kennecott. In fact in the ordinary negligence case, this fact would usually relieve the contractor of all liability, once the construction had been accepted by the employer." 100 Ariz. at 282, 413 P.2d at 753.

Liability was not imposed on Evans, but Kennecott, who prepared the plans and specifications and who maintained the bridge after it was built, was held liable for negligence in causing the wrongful death of plaintiff's son.

■ Although the plans drafted by Bell had to be approved by Maricopa County, Bell's duties and responsibilities were similar to those of Kennecott. Maricopa County did not control the details for the design of this project. Bell, unlike Evans, was not merely following plans and specifications provided to it by its employer, but in fact was hired by the county to exercise its discretion, special skills and knowledge to prepare a design which would result in the construction of a bridge and approaches thereto reasonably safe not only for those who traveled upon it, but for occupants of the adjacent land.

## WAS IT ERROR TO AWARD DAMAGES FOR LOSS OF PROFITS?

■ It is a well established rule in Arizona that loss of profits from the destruction or interruption of an established business may be recovered if the amount of actual loss is rendered reasonably certain by competent proof. *Martin v. La Fon*, 55 Ariz. 196, 100 P.2d 182 (1940); *Jacob v. Miner*, 67 Ariz. 109, 191 P.2d 734 (1948). In *Jacob*, supra, this court discussed the distinction between cases in which the fact of the damage is uncertain and those in which the fact of the damage is established but there is some uncertainty as to the extent or amount of the damages. We stated:

> "This distinction is fundamental for where, as here, it clearly appears that a party has suffered damage, a more liberal rule should be applied in allowing the court or jury to determine the amount of the damage than should be applied in weighing evidence on the question of whether or not the acts complained of will result in any damage at all to the party upon whom rests the burden of proof." *Jacob v. Miner*, 67 Ariz. at 116, 191 P.2d at 738–739.

■ The award of damages to the plaintiffs was not based on conjecture or speculation. Since both the Grangers and the Robertsons introduced evidence which established the amount of business income or profits that they lost as a result of the flooding of their property, it was not error to award damages to compensate for these losses.

Judgment affirmed.

STRUCKMEYER, V. C. J., and HAYS, J., concurring.