320

589 P.2d 1352

William PORRAS and Frances M. Porras, husband and wife, Appellants,

v.

CAMPBELL SALES COMPANY, a Foreign Corporation, Appellee.

No. 1 CA–CIV 3803.

Court of Appeals of Arizona,
Division 1,
Department C.

Dec. 18, 1978.

Rehearing Denied Jan. 17, 1979.

Review Denied Feb. 6, 1979.

Langerman, Begam, Lewis, Leonard & Marks by Noel Fidel, John D. Harris, Phoenix, for appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C. by Ralph E. Hunsaker, P. Michael Whipple, Phoenix, for appellee.

OPINION

EUBANK, Judge.

The sole issue in this appeal is whether the trial court properly applied the "accepted work doctrine" to this case when it granted the appellee's motion for a directed verdict. We hold that the trial court misconstrued the accepted work doctrine and that the motion for directed verdict was improperly granted.

When reviewing a directed verdict:

[W]e must consider the evidence and reasonable inferences therefrom in a light most favorable to the opposing party, *Tanner v. Levie*, 105 Ariz. 149, 460 P.2d 995 (1969). Moreover, the court cannot weigh the evidence when passing upon the propriety of such a motion, *Cano v. Neill*, 12 Ariz.App. 562, 473 P.2d 487 (1970). The test, as stated by the Arizona Supreme Court in *Davis v. Weber*, 93 Ariz. 312, 380 P.2d 608 (1963), is:

"A defendant's motion for a directed verdict admits the truth of whatever evidence the opposing party has introduced and any inferences reasonably drawn therefrom. [Citation omitted]. On such a motion the evidence must be treated and viewed in a light most favorable to the party against whom the motion is sought. [Citation omitted].

The motion should be granted only where the evidence is not sufficient to support a contrary verdict or so weak that a court would feel constrained to set aside such a verdict on a motion for new trial." 93 Ariz. at 314–15, 380 P.2d at 609.

*Hendricks v. Simper*, 24 Ariz.App. 415, 417, 539 P.2d 529, 531 (1975).

In light of these requirements, the facts of this case are as follows. On December 2, 1972, appellant Frances M. Porras was a customer at E–Z Save Market number 11, which was owned, controlled and operated by A. J. Bayless Markets, Inc. As she was standing in line to proceed through the cashier stand, a "Happy House" display fell from the shelf upon which it sat onto Mrs. Porras and caused her injuries. The "Happy House" was a temporary structure eight or nine feet tall, consisting of a roof and chimney mounted on a trunk. The apparent purpose of the structure was to draw attention to the goods displayed for sale on the shelves surrounding the structure.

The appellee, Campbell Sales Company, offered "Happy Houses" to merchants as store decorations at no cost. However, appellee's name did not appear on the structures and the merchants were not required to display Campbell products near the structures. In response to appellee's offer, Bayless Markets ordered 400 "Happy Houses" for its Bayless and E–Z Save Markets. At Bayless' request, Stephen Crookston, an agent of the appellee, installed 200 of the structures in the E–Z Save Markets, including the structure which struck Mrs. Porras. The structure was not attached to the shelf upon which it sat. Rather, Mr. Crookston, following the written instruction of the manufacturer of the structure, secured the structure by placing a box of soup in its base and relied upon gravity to keep it stable. Mrs. Porras was injured by the falling "Happy House" after Bayless had accepted the completed work of Mr. Crookston. There was no agreement, express or implied, that Campbell Sales Company would maintain the "Happy House" after it was installed.

After the accident in question, appellants sued A. J. Bayless Markets, Inc. on a theory of premises liability. They subsequently amended their complaint to join and assert a claim against Campbell Soup Company, Inc. and Campbell Sales Company. Prior to trial, the appellants entered into a *Gallagher*[1] agreement with A. J. Bayless. At trial, the appellants agreed to a voluntary dismissal of Campbell Soup Company, Inc. At the close of appellants' case, Campbell Sales Company, the appellee herein, and Bayless moved for a directed verdict. The trial court denied Bayless' motion, but granted appellee's motion on the basis of the appellee's argument that the accepted work doctrine prevented any liability to appellants. Because of the *Gallagher* agreement between the appellants and Bayless, the trial court excused the jury. A motion for a new trial was filed, briefed, argued and denied. This appeal followed.

## THE ACCEPTED WORK DOCTRINE IN ARIZONA

The original doctrine provided in substance that a contractor could not be liable for injuries sustained by a third person arising out of the contractor's work once that work had been completed, and accepted by the owner. The doctrine was first discussed and adopted by Arizona in its pure form in *Roman Catholic Church, Diocese of Tucson v. Keenan*, 74 Ariz. 20, 243 P.2d 455 (1952). The Arizona Supreme Court has considered three cases concerning the doctrine after its decision in *Roman Catholic Church, supra.* These are *Kennecott Copper Corp. v. McDowell*, 100 Ariz. 276, 413 P.2d 749 (1966); *Shannon v. Butler Homes, Inc.*, 102 Ariz. 312, 428 P.2d 990 (1967); and most recently, *L. H. Bell & Associates, Inc. v. Granger*, 112 Ariz. 440, 543 P.2d 428 (1975).

The *Kennecott* and *Shannon* opinions show the development of exceptions to the

---

1. *City of Tucson v. Gallagher*, 108 Ariz. 140, 493 P.2d 1197, 65 A.L.R.3d 597 (1972).

rule in Arizona and, indeed, the appellants argue that they fall within these exceptions. However, because of the current status of the law as enunciated in *Bell*, and the facts before this Court, a discussion of these cases and the exceptions is unnecessary. It is also unnecessary to discuss cases from other jurisdictions or treatises on the subject.[2]

In *Bell, supra*, the various plaintiffs owned or leased property along the New River in Maricopa County. The county constructed a bridge over the river near plaintiffs' property, and L. H. Bell, an engineering firm, provided the engineering plans for the bridge. During a period of heavy rains, the plaintiffs suffered flood damage to their property, allegedly due to the lack of *adequate* dikes and culverts around the bridge. Because Bell's plans for the bridge did not include such structures, plaintiffs sued Bell on a negligence theory. After plaintiffs won a money judgment, Bell appealed and argued that, pursuant to the accepted work doctrine, it could not be liable since it had completed its work and the county had accepted it prior to the flood. The Supreme Court affirmed the judgment and refused to apply the accepted work doctrine to Bell's situation, stating:

> L. H. Bell argues that once its plans for the design of the New River Bridge and approaches to the bridge were accepted by the county, this relieved Bell of liability for the injuries sustained by plaintiffs. Arizona follows the general rule that a contractor is not liable for injuries sustained by a third person once the work has been completed and accepted by the owner of the project. *Roman Catholic Church, Diocese of Tucson v. Keenan*, 74 Ariz. 20, 243 P.2d 455 (1952); *Kennecott Copper Corporation v. McDowell*, 100 Ariz. 276, 413 P.2d 749 (1966). *However, this rule applies only when the contractor has no discretion and is merely following*

> *the plans and specifications provided by its employer.*

*Bell, supra*, 112 Ariz. at 445, 543 P.2d at 433 (emphasis added). Because Bell was hired to exercise its discretion in designing the bridge and did not merely follow the plans and specifications of the county, it could not be relieved of liability under the accepted work doctrine.

The quoted language of the Supreme Court clearly indicates that the accepted work doctrine is a *narrow* rule of nonliability which applies only when the contractor was following the specific instructions of the employer. In all other cases, standard negligence principles apply.

After examining the record in this case, we believe that there is more than sufficient evidence to justify a jury's conclusion that, under *Bell*, Campbell Sales Company had discretion in choosing the method of installing and securing the "Happy House." It is clear from the testimony of Mr. Stephen Crookston, appellee's agent who installed the "Happy House" in question, that the *only* instructions of Bayless to appellee related to the location and height of the display, and that appellee could have secured the display by any means it chose. On September 21, 1976, Mr. Crookston testified as follows:

Q. And using gravity as the main force to keep it there.

A. That's correct.

Q. That was the only force that kept it there; isn't that right?

A. That's correct.

Q. Because you didn't use any wires or any strings to hold that there; did you, you used gravity, right?

A. That's correct.

Q. You didn't use any clamps or tie bars or anything like that, you just used gravity and that case of soup.

---

2. For annotations and cases discussing the doctrine see 13 A.L.R.2d 191 (1950) and 58 A.L.R.2d 865 (1958).

A. That's correct.

Q. Now, Mr. Crookston, no one at Bayless prevented you, no one told you specifically that you could not use any of these items; did they?

A. No, sir.

Q. So, if you would have wanted to, you could have used any of these items like clamps or wire or something like that; right?

A. Yes, sir.

Mr. Crookston further testified on September 23, 1976, as follows:

Q. In fact, isn't that the sole province of the installer, the installer makes the decision how to attach these displays to the shelf; isn't that so?

A. Yes, sir.

Q. And that was your decision alone; wasn't it?

A. Yes, it was.

\* \* \* \* \* \*

Q. Did you ever discuss with Mr. Stark or any other employee of A. J. Bayless as to how you were going to secure the happy houses?

A. No, sir.

Q. That decision was entirely yours.

A. Mine and the manufacturer's, being that there is only one way to assemble and to secure the display, sir.

\* \* \* \* \* \*

Q. Okay. I appreciate that. But in response to my question, at any time, did you discuss with Mr. Martino or any of the employees of A. J. Bayless as to the way they were put up and secured?

A. No, sir.

Q. Okay. Did you discuss with them any of the instability factors involved with the use of cans on the displays?

A. No, sir.

Mr. Crookston's testimony is clearly evidence from which a jury could reasonably conclude that appellee had discretion in choosing the method for installing and securing the "Happy House," albeit not its location or height, and that appellee was not "merely following the plans and specifications provided by its employer." *Bell, supra,* 112 Ariz. at 445, 543 P.2d at 433. Consequently, the case should have gone to the jury and the trial court erred by directing a verdict in favor of appellee and by denying the motion for a new trial. *See Hendricks, supra.*

The judgment in favor of Campbell Sales Company is reversed and the case is remanded for a new trial.

WREN, P. J., and NELSON, J., concur.