804 P.2d 800

**William ANDREWS, for and on Behalf of Amanda KIME, a minor child, Plaintiff–Appellant,**

v.

**Benjamin CASAGRANDE and Mary Casagrande, husband and wife, Defendants–Appellees.**

**No. 1 CA–CV 88–515.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 20, 1990.

Review Denied Feb. 20, 1991.

72

Treon, Strick, Lucia & Aguirre by Anthony R. Lucia, Mark R. Jewett, Phoenix, for plaintiff-appellant.

Sorenson & Moore by Andrew F. Marshall, and John S. Schaper, Phoenix, for defendants-appellees.

## OPINION

KLEINSCHMIDT, Judge.

This appeal concerns whether the former owners of residential property owed a duty to a person who was injured by an unreasonably dangerous condition on the property. The former owners had created the condition, but they sold the property before the injury occurred. We conclude that section 352 of the *Restatement (Second) of Torts* applies to this situation, and hold that the former owners owed no duty to the injured person.

## FACTS AND PROCEDURAL HISTORY

Amanda Kime, who was twenty months old at the time she was injured, suffered severe brain damage as the result of having nearly drowned in a backyard swimming pool. The accident occurred in May of 1984, at a home that the defendants, Benjamin and Mary Casagrande, had once owned. Fifteen months before the accident, the Casagrandes sold the property to people who are not a party to this appeal, but who leased the property to the Kime family about eight months before the accident occurred.

The swimming pool was designed as an above-ground pool with sides that were 48 inches high. The Casagrandes purchased the pool across the counter, assembled it, and partially sunk it in the ground so that the walls were only 18 inches above the ground. Amanda wandered into the backyard and fell into the pool.

Plaintiff, conservator for Amanda Kime, sued the Casagrandes, alleging that as former owners of the property they were liable for the injury caused by an unreasonably dangerous condition which they had created. Specifically, plaintiff contends that the pool was dangerous because its raised walls created the impression that it was safe while in fact a small child could climb into it. The Casagrandes moved for summary judgment and this was denied. A year later, after Division Two of this court handed down its decision in *Dorman v. Swift & Co.*, 157 Ariz. 355, 757 P.2d 1064 (App.1988), the Casagrandes moved for re-

consideration, and summary judgment was granted in their favor on the strength of that case.

Plaintiff appealed, and after briefing was complete, the Supreme Court of Arizona, which had granted a petition for review in the *Dorman* case, issued its own opinion in *Dorman v. Swift & Co.*, 162 Ariz. 228, 782 P.2d 704 (1989). The supreme court reversed Division Two and vacated its opinion. We requested supplemental briefs to address the supreme court's decision, and the parties complied with our request.

## THE FORMER OWNERS OF THE PROPERTY OWED NO DUTY TO THE INJURED PERSON

■ Section 352 of the *Restatement (Second) of Torts* provides:

Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.

Section 353 makes an exception to this rule if the vendor conceals or fails to disclose an unreasonably dangerous condition.

We look to the the supreme court's opinion in *Dorman* to see whether this provision of the *Restatement* applies to this case. To fully understand that opinion, it is helpful to first examine the vacated opinion of the court of appeals in the same case.

In *Dorman*, the property in question, a meat-packing plant, had originally been owned by Swift & Company. Swift had purchased a conveyor belt which it had assembled and installed in the plant. Later the plant was sold to Sun Land, the plaintiff's employer. The plaintiff was injured when another employee inadvertently activated the belt while the plaintiff was repairing it. The plaintiff sued Swift, alleging that it had negligently installed the on/off switches for the belt.

The court of appeals ruled that section 352 applied and that Swift had no duty to the plaintiff. It reasoned that the conveyor belt was a fixture to the realty, and it was persuaded that responsibility follows possession of the land, saying:

Once the sale transaction is completed and possession taken by the vendee, the vendor has no control over the property, has no right to go on the property, and has no means of correcting defects. [Plaintiff] would have us apply the principles of strict liability as they relate to manufactured goods to the sale of real estate. This would lead to an unwarranted expansion of a vendor's liability in the sale of real property.

157 Ariz. at 357, 757 P.2d at 1066.

The supreme court accepted review and in its opinion framed the issue as "[w]hether § 352 of the *Restatement (Second) of Torts* bars a personal injury negligence action against the maker of a product, when the maker is also coincidentally the vendor of real property upon which the product is located." *Dorman*, 162 Ariz. at 229, 782 P.2d at 705. It then went on to observe that it has not yet adopted section 352 as the rule for Arizona and said:

The issue here is whether § 352 applies *to this case*. We note that both plaintiff and defendant take extreme positions with respect to the general applicability of § 352. We decline to accept their invitation to decide the abstract question whether § 352 always or never applies. Because we decide that § 352 does not apply to this case, we leave open the question of whether it might apply in a different case.

*Id.* at 231, 782 P.2d 707 (emphasis in original).

The court then went on to explain why section 352 did not apply. It first rejected the plaintiff's argument that the *Restatement* did not apply because the machinery was sold separately from the land. It said that liability ought not depend upon whether the injury was caused by something that met or failed to meet the legal definition of a fixture. It further stated:

We also consider a mere fortuity the fact that in this case the maker of the product happens to be the vendor of the real

property. Were the maker of the product not also the vendor of the real property, it would be liable as the maker for its acts of negligence. *See Prosser & Keeton On Torts*, § 101 at 708 (5th ed. 1984). If § 352 is to apply at all in Arizona, it certainly cannot operate to insulate the maker of a product from its negligence where the product is wholly unrelated to the use or enjoyment of the land. Section 352 relates to the liability of a vendor of land after the transfer of title and possession of realty, not to the responsibility of a manufacturer of a product.

*Id.* at 231, 782 P.2d at 707.

In the case now before us, plaintiff's first argument is that *Dorman* requires reversal because the pool which caused the injury is not real property. He points out that the pool was purchased over the counter in boxes, then constructed and partially sunk into the ground. This, he says, makes it a "product" which does not fall within the purview of the *Restatement* rather than a "fixture" which was a part of the real estate. Plaintiff insists that at the very least, the trial judge erred in granting summary judgment because the issue of whether the pool was a product or fixture raises a question of material fact.

This argument ignores the fact that the supreme court, in *Dorman,* was explicit on this point—the question does not turn on whether the thing that caused the injury meets the definition of a "fixture." The pool is unquestionably, in the words of the *Restatement,* an "artificial condition" which existed on the property at the time the Casagrandes sold it. Fixture or not, it comes within the purview of section 352.

Plaintiff further argues that all he is doing is seeking to hold the Casagrandes responsible for their affirmative act of negligence. He insists that there is no difference between what the Casagrandes did in sinking their pool into the ground and what Swift did in *Dorman* when it bought the parts for the conveyor belt and assembled and installed them in a dangerous fashion.

We have examined the cases from other jurisdictions which bear on this question.

One that is remarkably close in point is *Preston v. Goldman,* 42 Cal.3d 108, 227 Cal.Rptr. 817, 720 P.2d 476 (1986). The facts in *Preston,* which involved a near drowning in a backyard ornamental pond, are virtually identical with the facts of the case we now decide. The former owners of the home in *Preston,* a couple named Kubichan, had built the pond before they sold the property. The trial court instructed the jury that once a seller of land has sold his property, he is not subject to liability for injuries caused thereon by a dangerous condition, subject to specified exceptions. The jury found in favor of the Kubichans.

The matter went to the California Court of Appeal which held that a vendor who negligently creates an unreasonably dangerous condition on his land is liable for injuries caused by that condition solely because he was the one who created the condition. Liability, according to the court of appeal, did not depend on the defendant's status as the former owner of the land.

The Supreme Court of California reversed the court of appeal in an exhaustive review of the law of predecessor landowner liability. After weighing a number of competing factors, and after considering the same argument that plaintiff makes in this case to the effect that the Casagrandes themselves created the dangerous condition, the Supreme Court of California held that the former owners were not liable. It concluded:

> Weighing all the factors involved, primary importance in ascribing liability here must be placed on ownership and control of property. Therefore, we will reverse the Court of Appeal's determination that the judgment for the Kubichans should be reversed, on the ground that the trial court's instruction, utilizing the concepts embodied in *Copfer v. Golden* [135 Cal.App.2d 623, 288 P.2d 90 (1955)] and Sections 352 and 353 of the Restatement Second of Torts, was proper.

*Id.* 42 Cal.3d at 126, 227 Cal.Rptr. at 829, 720 P.2d at 488.

We realize that our supreme court was aware of the decision in *Preston* when it

decided *Dorman.* We also realize that Division Two of the Court of Appeals, without mentioning *Preston,* rested its decision in *Dorman* in part on the rationale that the Supreme Court of California adopted in *Preston,* i.e., primary importance lies in ownership and control of the property. In *Dorman,* our supreme court did not criticize *Preston* on this point, however, and in mentioning that case in passing, it seemed to accept without comment that the prior owners in *Preston,* who had put in the ornamental pond, were not the "makers" of the product in the same sense that Swift was the "maker" of the conveyor belt.

We are most conscious of the stress that our supreme court laid on the fact that its decision in *Dorman* was restricted to the facts of that case, and that it expressly declined to hold that section 352 of the *Restatement* would never apply in this state. In our opinion, if section 352 is ever to apply in Arizona, it is in just such a case as the one now before us. Here, we have nothing more than homeowners who, for their own use and not for any commercial purpose, made a home improvement and in doing so created a dangerous condition. They later sold the property without doing anything to conceal the condition, the existence of which was immediately obvious to any observer.

We are aware of no Arizona decisions which would impose liability on a former owner of residential property under the circumstances that exist here. We believe that section 352, a rule which limits liability for negligent conduct, ought to apply to homeowners who sell their residential property. To hold otherwise would be to expand liability, and to expand it in a way against which homeowners would have difficulty protecting themselves. *See Preston,* 42 Cal.3d at 119–21, 227 Cal.Rptr. at 824–25, 720 P.2d at 483–84 (homeowners' insurance coverage not available for this loss).

We agree with the reasoning of the California Supreme Court in *Preston* insofar as it is compatible with what our supreme court said in *Dorman.* Since our supreme court has reserved judgment as to the reach of section 352, we express no opinion about how the principle expressed in that provision applies to other fact situations.

## THE EXCEPTION TO SECTION 352 OF THE RESTATEMENT DOES NOT APPLY

▉ Plaintiff argues that even if section 352 of the *Restatement* applies, there is a disputed question of fact as to whether the exception to that provision articulated in section 353 comes into play. Section 353 reads in part:

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

Plaintiff, citing cases, correctly asserts that whether a condition is open and obvious is generally a question for the trier of fact to resolve. He recites that when deposed, Benjamin Casagrande said that he did not think the pool was unsafe. David Kime, the father of the injured child, testified that prior to the accident he was "maybe not aware" of the potential danger, but, after the accident, it was a proven fact that the pool was dangerous. Plaintiff also relies upon an affidavit of George E. Lawniczak, presented for the first time in the plaintiff's motion for new trial, which was filed after the court granted summary judgment. Lawniczak, an expert on aquatic safety, stated that:

The pool in this case is easily seen and therefore open and obvious; however, the danger in this case is not open and obvious.

An adequate barrier surrounding an aboveground pool eliminates a significant portion of the risk of an infant or toddler drowning in that pool. However, that same barrier gives a false illusion of security and safety, particularly when it is recessed partially into the ground.

Based upon all of this, the plaintiff simply asserts that there is a genuine issue of material fact regarding whether the new property owners or the Kimes had reason to recognize the condition and realize the risk. If not, he says, the Casagrandes are liable. Setting aside the serious problems attending the foundation for, and timeliness of, the Lawniczak affidavit, the trouble with plaintiff's argument is that it stops short of addressing the essence of the problem. If the danger posed by the pool was recognizable by the Casagrandes, it was equally recognizable by the new property owners, and by their lessors, the Kimes. If the danger was not so recognizable that knowledge should not be attributed to the new property owners or the Kimes, it was equally obscure to the Casagrandes. The Casagrandes neither concealed nor failed to disclose anything when they sold the property. The pool was there for everyone to see and for everyone to evaluate. Plaintiff does not suggest otherwise, but simply does not address the point. *See Shannon v. Butler Homes, Inc.*, 102 Ariz. 312, 316, 428 P.2d 990, 994 (1967) (deceptive illusion created by glass door as obvious to owner as to defendant builder); *Bailey v. Gammell*, 34 Wash.App. 417, 420, 661 P.2d 612, 614 (1983) (section 353 of the *Restatement* not applicable where vendor had no reason to believe that vendee would not discover that steep dark stairs were dangerous).

The judgment of the trial court is affirmed.

CLABORNE, P.J., and EHRLICH, J., concur.